The Hon. John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>MICHAEL JANISCH,<br><br>Defendant. | NO. CR24-216-JHC<br><br>**GOVERNMENT'S RESPONSE TO MOTION TO MODIFY BOND CONDITION** |

## I.　INTRODUCTION

On November 6, 2024—though Janisch was charged with two separate offenses that triggered the presumption under Title 18, United States Code, Section 3142(e)—Judge McCandlis ordered Janisch's release on conditions. In fashioning an appropriately tailored release order, Judge McCandlis included a condition that prohibited contact between Janisch and his girlfriend—Audrey Chipman—a potential witness in this matter.

Though the record evidence amply supported imposition of such a condition, Janisch now seeks review before this Court,[1] and requests that the condition be modified

---

[1] Janisch also could have brought a motion for the requested relief before Magistrate Judge McCandlis. *See* 18 U.S.C. § 3142(c)(3).

Response to Motion to Modify Bond Condtion - 1
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to allow him "to have non-offense related contact with Chipman." Dkt. 25 at 4. In seeking such a modification, Janisch essentially asks this Court to place him on the "honor system" and allow contact with the individual with whom he resided at the epicenter of his drug trafficking activity, i.e., the Mercer Island home that he shared with Chipman.[2]

Given Chipman's unique position as the witness with perhaps the best view of Janisch's yearslong drug trafficking scheme—and the risk of witness tampering or collusion—the government opposes Janisch's motion. Though the government opposes modification of the bond as proposed by Janisch, the government does not oppose a modification of the bond that would allow contact between Janisch and Chipman if that contact could be appropriately monitored by defense counsel or U.S. Probation and Pretrials Services.

## II.   RELEVANT INVESTIGATIVE FACTS

Janisch was identified as a target of this investigation in or about January 2023, following the arrest of Bryce Hill, who had been charged in the Western District of Pennsylvania for Conspiracy to Distribute Controlled Substances in December 2022. *See* CR22-021 (W.D. Pa. Dec. 20, 2022). A search of Hill's phone showed drug and weapons-related Snapchat communication between Hill and Snapchat user "nbaseattle1"—later identified as Janisch. Additional investigation, including Snapchat warrants for Janisch's "nbaseattle1" account, and the accounts of other targets of investigation, showed that Janisch also had drug-related communication with Amir

---

[2] On the morning of October 30, 2024, following the execution of a search warrant at Janisch and Chipman's shared residence, the government conducted a brief interview of Chipman in the field. Following that brief field interview, also on October 30, 2024, the government conducted an additional interview at the Homeland Security Investigations office in Seattle, Washington. On or about November 19, 2024, Chipman was assigned CJA counsel. Shortly after counsel was assigned, the government requested an additional interview with Chipman. The government's request was declined.

Response to Motion to Modify Bond Condtion - 2
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Osman.³ Finally, evidence obtained from a subpoena to CashApp showed that beginning in 2020, and continuing into October 2024, Janisch received approximately $360,371 in suspected drug proceeds, spread across 615 transactions.

On October 30, 2024, investigators executed a federal search warrant at Janisch's Mercer Island residence. Both Janisch and Chipman were present at the residence when the search was executed.

During the search of the shared residence, investigators discovered a large safe in the master bedroom. In the safe, investigators recovered, *inter alia*, approximately 3.6 kilograms of cocaine; approximately 643.2 grams of ketamine; approximately 766.1 grams of MDMA; approximately 64.44 grams of LSD; 23 firearms, including one that was modified with a "Glock switch"—which would enable the weapon to fire fully automatically, $177,923 in U.S. currency, several bags of "switches," and Janisch's U.S. passport. *See* Exhibit (Ex.) 1.

Next to the bed in the master bedroom, investigators found a loaded Mossberg 590 shotgun as well as a loaded Spring Field Armory XD-S, .45 caliber semiautomatic pistol with an extended magazine. *See* Ex. 2.

Another room in the house appeared to be an "office" dedicated to the preparation of controlled substances for shipment, as it contained a desk with printer (presumably for postage), a vacuum-sealer and vacuum-seal bags, USPS mailers and other envelopes, and a digital scale. In a closet in this room, investigators also found—in vacuum-sealed bags—marijuana and psilocybin mushrooms totaling approximately 31.24 kilograms. *See* Ex. 3.

Investigators also located an apparent drug ledger with Chipman's name on the cover page. *See* Ex. 4. Among the controlled substances listed in the ledger were "acid"

---

³ On June 24, 2024, Osman was shot and killed in the University District neighborhood of Seattle, Washington. More specifically, Osman was found in the street near a drug-involved premises located at NE 42nd Street and Pasadena Place NE.

Response to Motion to Modify Bond Condtion - 3
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(LSD) and "shrooms" (psilocybin mushrooms)—two of the controlled substances seized during the search of the residence. The notebook also contained the names of apparent customers, references to where the controlled substance transaction would take place ("Addy"), and the associated price for the quantity to be purchased. *Id*.

Near the front door of the residence, investigators found a messenger bag. Inside the messenger bag, investigators found a Glock 26, 9mm caliber semiautomatic pistol along with a wallet containing, among other items, a Costco card in Chipman's name. Of note, Janisch's wallet was located elsewhere in the residence.

### III.  RELEVANT PROCEDURAL FACTS

Janisch was arrested on October 30, 2024, and made his initial appearance on November 1, 2024. Dkt. 4. The government moved for his detention. Dkt. 6. On November 6, 2024, Janisch filed a memorandum in support of release. Dkt. 9. The government filed its memorandum in support of detention the same day. Dkt. 11.

At the hearing on November 7, 2024, held before Magistrate Judge Paula L. McCandlis, the government argued in support of detention and defense counsel argued for release. *See* Dkt. 24, *Tr. of Det. Hearings Proceedings*. During the government's argument it noted that Janisch's identified "support structure"—which included Chipman—should not provide the court with much reassurance that these contacts would mitigate the danger that Janisch posed if released. *Id*. at 13:24 – 16:2. The court then asked the government if it considered Chipman a witness in the case. *Id*. at 16:3 – 16:4. The government said it would consider her a witness as well as an uncharged co-conspirator. *Id*. at 16:5 – 16:7. The court then noted, "[s]o, just to follow that logic, if, if the defense is able to convince the Court to overcome the presumption in this matter, would you want that directive for no contact to be very specific regarding her as a witness?" *Id*. at 16:8 – 16:12. The government responded that it thought that a no contact condition with respect to witnesses or codefendants that specifically named Chipman would be appropriate. *Id*. at 16:13 – 16:17.

Response to Motion to Modify Bond Condtion - 4
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   During the defense presentation, and after the above exchange between the court
2   and the government regarding a release condition that included a no-contact provision
3   prohibiting contact with Chipman, counsel asked Judge McCandlis to release Janisch on
4   "conditions recommended by the Pretrial Services Office and any other conditions the
5   Court deems appropriate." *Id*. at 31:18 – 31:21.
6   After hearing from both parties, Judge McCandlis noted that in addition to the
7   statutory presumption, the facts proffered by the government gave the court concerns
8   regarding Janisch's dangerousness. *Id*. at 35:17 – 35:19. The court specifically noted
9   "sophisticated and planning and thoughtfulness and thinking through things in a way that
10  at a level that makes you wonder can I trust, can I trust that this person will not be a risk."
11  *Id*. at 35:21 – 35:24. Judge McCandlis reiterated that she was struggling with this
12  question and indicated that the release plan as proposed by Pretrial Services was not
13  sufficient to address the court's concerns. *Id*. at 35:2 – 35:5. Judge McCandlis then
14  indicated that the court would add a no contact condition—to include Chipman—to the
15  bond. *Id*. at 35:6 – 35:11.
16  After fashioning the bond, Judge McCandlis discussed the no contact order with
17  Janisch on two separate occasions. *Id*. at 41:20 – 41:25; 47:7 – 47:25. During the second
18  discussion with Janisch on this point the court noted, "[o]f all the things I'm ordering you
19  to do, I think that's going to be your toughest one and I need to know that you're going to
20  be able to do that." *Id*. at 47:21 – 47:24. Janisch responded that he would be able to
21  comply with this condition. *Id*. at 47:25.
22  On November 13, 2024, a grand jury returned an indictment charging Janisch with
23  one count of Possession of Controlled Substance with Intent to Distribute (Cocaine,
24  MDMA, LSD, psilocybin mushrooms, and ketamine) in violation of 21 U.S.C. §§
25  841(a)(1) and (b)(1)(B), and one count of Possession of a Firearm in Furtherance of a
26  Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Dkt. 14.
27

Response to Motion to Modify Condtion - 5
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| 1 | **IV. LAW AND ARGUMENT** |
| 2 | The Bail Reform Act provides that a court should detain a defendant pending trial |
| 3 | if "no condition or combination of conditions . . . will reasonably assure the appearance |
| 4 | of the person as required and the safety of any other person and the community." 18 |
| 5 | U.S.C. § 3142(f). The United States typically bears the burden of showing that a |
| 6 | defendant poses a danger to the community by clear and convincing evidence, and it |
| 7 | bears the burden of showing that a defendant poses a flight risk by a preponderance of the |
| 8 | evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). |
| 9 | In presumption cases, such as this, courts have found that the defendant bears the |
| 10 | burden of producing evidence that he does not pose a danger to the community or risk of |
| 11 | flight in order to rebut the presumption. *See United States v. Abad*, 350 F.3d 793, 797 |
| 12 | (8th Cir. 2003); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *Stricklin*, |
| 13 | 932 F.2d at 1354. The government retains the burden of persuasion. *Mercedes*, 254 F.3d |
| 14 | at 436. However, even if a defendant has met his burden of production relating to these |
| 15 | two factors, the presumption favoring detention does not disappear. Rather, it remains a |
| 16 | factor to be considered among those weighed by the court. *See Stricklin*, 932 F.2d at |
| 17 | 1354-55; *Mercedes*, 254 F.3d at 436; *United States v. Rueben*, 974 F.2d 580, 586 (5th |
| 18 | Cir. 1992). |
| 19 | In the context of a motion for review of detention order brought under Section |
| 20 | 3145(b), the Ninth Circuit has held that the district court is to conduct *de novo* review. |
| 21 | *See United States v. Koenig,* 912 F.2d 1190, 1191 (9th Cir. 1990).[4] However, even when |
| 22 | de novo review is applied under Section 3145, the district court is not required to start |

---

[4] Although the Ninth Circuit has not ruled on whether a district judge's review of a magistrate judge's order on a motion seeking to modify conditions of release under Section 3142(a)(2) should be reviewed de novo*, district courts in this circuit routinely adopt this standard. *See e.g.*, *United States v. Overstreet,* 2011 WL 5079848, at *1 (D.Idaho Oct. 26, 2011) (citing *United States v. Koenig,* 912 F.2d 1190, 1192 (9th Cir.1990); *United States v. Pool,* 2009 WL 2152029, at *1 (E.D. Cal. July 15, 2009), *vacated on other grounds,* 659 F.3d 761, 761–62 (9th Cir. 2011).

Response to Motion to Modify Bond Condtion - 6
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  over or proceed as if the Magistrate Judge's findings did not exist. Instead, the district
2  court "should review the evidence before the magistrate and make its own independent
3  determination whether the magistrate's findings are correct, with no deference." *See*
4  *Koenig,* 912 F.2d at 1193. Though the district court may hold an evidentiary hearing, it is
5  not required to do so. *See id.* As the Ninth Circuit held, "[t]he point is that the district
6  court is to make its own 'de novo' determination of facts, whether different from or an
7  adoption of the findings of the magistrate." *See id.*

8        Here, the inclusion of a no-contact provision between Janisch and Chipman is
9  entirely supported by the record. Given that Janisch and Chipman's shared residence is
10 the focal point of the charged conduct—possession with intent to distribute controlled
11 substances and possession of a firearm in furtherance of a drug trafficking
12 crime—Chipman is in a singularly unique position as a potential witness. As detailed
13 above, evidence of the charged offenses was found throughout the residence. Because
14 Chipman was the only other occupant of the Mercer Island residence, even if an entirely
15 passive witness, she has key information about Janisch's drug trafficking activity. In
16 addition to providing information about myriad drugs and packaging materials found
17 throughout the residence, Chipman would be able to provide key information about who
18 exercised control over the thirty-plus firearms seized from the Mercer Island
19 residence—including the Glock 26 that was found in a Louis Vuitton messenger bag that
20 also contained her wallet. *See* Dkt. 25 at 5.

21       Though perhaps less involved, there is evidence that Chipman was more than just
22 a passive observer in Janisch's drug trafficking activity. Though the "ledger"—with
23 Chipman's name on it—may have contained "mostly apparent references to marijuana,"
24 (Dkt. 25 at 5), at the top of the first page of the ledger is the word "serves," as well as
25 references to "acid," "tabs," and "shrooms," i.e., two of the controlled substances that are
26 alleged in Count 1 of the Indictment in this matter. *See* Dkt. 14.

27

Response to Motion to Modify Bond Condtion - 7
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Additionally, and as noted by the government during the bond hearing, evidence obtained pursuant to a warrant for the "nbaseattle1" Snapchat account suggests that Janisch may have used Chipman as a go-between for individuals to whom he supplied drugs. Specifically, on June 8, 2023, "nbaseattle1" sent a message advising "svtcontour," "[n]ext time if needed jusr [*sic*] remember my girls name Audrey chipman and shoot her a message on Facebook you know I got you."

Though the record evidence clearly established a basis for Magistrate Judge McCandlis to impose the no contact condition, Janisch now suggests that this Court "should conduct an individualized assessment of Ms. Chipman, including her background, her relationship with Mr. Janisch, and the evidence proffered by the Government, to determine if a condition restricting all contact between Janisch and Chipman" is appropriate under Section 3142. Dkt. 25 at 4. In making this argument, Janisch attempts to rely on caselaw from the posttrial supervised release context—most specifically *United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012). Importantly, the court in *Wolf Child* noted that the need for a "particularized finding" when fashioning supervised release conditions by the sentencing judge is rooted in 18 U.S.C. § 3583(d)(2). *Id*. at 1090. Specifically, Section 3583(d)(2) requires that a sentence "involves no greater deprivation of liberty than is reasonably necessary" to achieve the goals of deterrence, protection of the public, and/or defendant rehabilitation. *Id*.

While Section 3142 directs the court to impose the least restrictive means when fashioning a pretrial bond, it does so with very different concerns involved. Importantly, given the procedural posture, the risk of collusion or witness intimidation is typically not before a sentencing court. In the pretrial context, however, the judicial officer fashioning a release order has the statutory mandate to mitigate possible obstruction of an ongoing criminal case. *See* 18 U.S.C. § 3142(f)(2)(B). Moreover, as part of this statutory mandate, a judicial officer fashioning a pretrial bond has the explicit authority to curtail an

Response to Motion to Modify Condtion - 8
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

individual's fundamental right of association, and/or prohibit contact with potential witnesses. *See* 18 U.S.C. §§ 3142(c)(1)(B)(iv)-(v).

Given the above-noted differences between the statutory authority, and the interests at stake in the pretrial and posttrial context, it is not surprising that courts have regularly issued, and reviewing courts have upheld, pretrial no contact orders—to include when the parties subject to the order are in an intimate relationship. *See, e.g., United States v. Pickel,* 500 Fed.Appx. 771 (10th Cir. 2012) (no contact order between defendant and witness girlfriend in a drug trafficking prosecution upheld)*; United States v. Valdez-Sanudo,* CR20-217-JCC, 2021 WL 1376954, at *2 n.2 (W.D. Wash. Apr. 12, 2021) (noting that defendant's codefendant wife was released on condition of no contact with defendant); *United States v. Montemayor*, No. 4:20-CR-179-SDJ, 2020 WL 7631194 (E.D. Tex. Dec. 22, 2020) (rejecting defendant's argument that "married" codefendants should be excepted from the court's prohibition on contact with co-defendants).[5]

Moreover, when courts have struck down no contact provisions between intimate partners in the pretrial context, they have done so under facts that are not presented here. For example, in 2011, a district court in Iowa found that a pretrial bond condition which prohibited all contact between married codefendants was overbroad. *United States v. Martinez*, 4:21-cr-00107-SMR-HCA-1,2, 2021 WL 4169789 at *1 (S.D. Iowa. Oct. 26, 2011). However, central to the court's finding was the fact that the codefendants had been married for thirteen years, their finances were intertwined, and the couple had a minor child. *Id*. at *2. Significantly, although the court modified the bond condition to permit communication with each other about matters unrelated to the criminal case, it included a condition that upon request of the U.S. Probation Office, the co-defendant spouses were required to provide records of any electronic communications with each other. *Id*. at *3.

---

[5] The Pretrial Services webpage for the Western District of Washington notes that pretrial release conditions can include "no contact with witnesses or co-defendants," available at: https://www.wawp.uscourts.gov/pretrial (last accessed January 29, 2025).

Response to Motion to Modify Bond Condtion - 9
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Here, and though the government credits the representation that Janisch and Chipman have been in a relationship for almost three years, they do not have children in common, nor has there been any representation that their finances are otherwise intertwined.

## V.  CONCLUSION

Given the government's strong interest in preventing witness tampering and collusion, the government opposes Janisch's request to modify his bond conditions such that he would be allowed unmonitored contact with Audrey Chipman—a potential witness with a unique day-to-day view of defendant's yearslong drug trafficking scheme. The government does not oppose a modification of Janisch's bond conditions that would allow contact between Janisch and Chipman if that contact could be appropriately monitored by defense counsel or U.S. Probation and Pretrials Services.

DATED this 29th day of January, 2025.

TESSA M. GORMAN
United States Attorney

*s/ Joseph C. Silvio*
JOSEPH C. SILVIO
MICHELLE JENSEN
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-7970
joseph.silvio2@usdoj.gov

*I certify this pleading contains 2,938 words, in compliance with Local Criminal Rule 12(b)(5).*

Response to Motion to Modify Bond Condtion - 10
*United States v. Michael Janisch,* CR24-216-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970