The Honorable John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JANISCH,<br><br>Defendant. | NO. CR24-216 JHC<br><br>UNITED STATES' SENTENCING<br>MEMORANDUM |

## I.      INTRODUCTION

Over a period of years, Defendant Michael Janisch trafficked in cocaine, MDMA, ketamine, LSD, psilocybin mushrooms, and marijuana. Given the scope of his drug trafficking operations, he amassed hundreds of thousands of dollars in drug trafficking proceeds. Moreover, Janisch's chosen vocation afforded him a lifestyle that many work tirelessly to attain, including the rental of a home on Mercer Island and multiple international trips to exotic locales.

And, not surprisingly, given the substantial amounts of drugs and cash drug trafficking proceeds stored at his home, he did so while armed. Indeed, when Janisch's home was searched on October 30, 2024, investigators located a veritable arsenal of assault-type semiautomatic weapons, thousands of rounds of ammunition, firearm suppressors, and numerous machine gun conversion devices, also known as "switches"—

U.S. Sentencing Memorandum - 1
*United States v. Michael Janisch,* CR24-216 JHC

used to convert a semiautomatic Glock-style handgun into a machine pistol capable of automatic fire.

Given the scope of Janisch's drug trafficking activity, and the fact that he did so while heavily armed, the government joins the recommendation of United States Probation that Janisch be sentenced to a total sentence of 96 months in custody—36 months of confinement on Count 1, followed by the mandatory consecutive term of 60 months of imprisonment on Count 2. The government further recommends that the Court impose a term of supervision of three years as required under 21 U.S.C. § 841(b)(1)(C). Finally, the government defers to the Court on whether a fine should be imposed.

## II.    FACTS

### A. Background of Investigation

This investigation arose from a drug trafficking investigation initially conducted by federal and state investigators in the Western District of Pennsylvania (WDPA). PSR ⁋ 28. As a result of that earlier investigation, on December 20, 2022, twenty-nine defendants were charged in the WDPA for violation of Title 21, United States Code, Section 846, Conspiracy to Distribute Controlled Substances, and other federal offenses. *See* WDPA Case No. CR22-021. *Id*. The WDPA conspiracy spanned several states, including Pennsylvania, Arizona, and Washington. *Id*.

One of the leaders of the Washington arm of the conspiracy was Bryce Hill. *Id*. Intercepted communications over Hill's cell phone, from December 1, 2022, to January 11, 2023, revealed that Hill was a prolific narcotics distributor in this District. Based on evidence gathered in the prior investigation, agents estimate Hill was receiving and redistributing approximately one million fentanyl pills every seven to ten days. *Id*. The investigation also showed that Hill was distributing significant amounts of cocaine and methamphetamine. *Id*.

Hill was charged in the WDPA case and arrested in Seattle on January 11, 2023. *Id*. Based upon evidence obtained from the forensic analysis of Hill's cell phone—among

U.S. Sentencing Memorandum - 2
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other means—investigators learned that there were numerous co-conspirators in Western Washington with whom Hill was working to distribute drugs prior to, and after, his arrest. *Id*. Among Hill's co-conspirators identified in the subsequent Western District of Washington investigation were Amir Osman and Michael Janisch. *Id*.

Osman was identified as the leader of the DTO and the investigation into Osman, and his co-conspirators, resulted in three rounds of wiretaps targeting Osman, Muhammed Ceesay, Lamin Saho, and Ali Kuyateh.[1] *Id*. ¶¶ 28-29.

On June 24, 2024, as investigators were preparing to begin the second round of interception over a phone used by Muhamed Ceesay—one of Osman's close associates—Osman was shot and killed outside an apartment in the University District of Seattle. *Id.* ¶ 29.

Notwithstanding the arrest of Hill, and death of Osman, additional investigation shows that Janisch continued to engage in significant drug trafficking activity throughout 2024. Indeed, when investigators searched Janisch's residence on October 30, 2024, they located evidence of a sophisticated drug trafficking operation involving the distribution of cocaine, LSD, MDMA, ketamine, psilocybin mushrooms, and marijuana.

**B. Historical Evidence of Janisch's Drug Trafficking and Weapons Possession**

In communications extracted from Hill's phone (TT39) pursuant to federal warrant, investigators identified Snapchat communications between Hill (user account "bmoneydadon42") and Janisch (user account "nbaseattle1"). *Id.* ¶ 30.

**1. Janisch's Snapchat Communications with Hill**

Among the communication between Janisch and Hill, investigators noted an exchange on January 10, 2023, i.e., the day before Hill was arrested, that related to Glock

---

[1] The government does not believe that Janisch was intercepted during any of the three rounds of wiretaps, i.e., no phone number known to be used by Janisch was intercepted.

U.S. Sentencing Memorandum - 3
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"switches"[2] (*Id.*):



The above Snapchat conversation between Hill and Janisch continued, and they then began to discuss how much money they were making from narcotics sales:



---

[2] Through the broader investigation, investigators know that members of the larger DTO have regularly possessed Glock firearms with such "switches." For example, the day after the above exchange—when Hill was arrested—investigators found a Glock pistol, modified with a "switch" as well as an extended magazine, under the driver's seat of Hill's 2016 Mercedes. Additionally, on May 22, 2024, investigators searched the residence of another DTO member, Cooper Sherman, in the Ballard neighborhood of Seattle and found a Glock pistol modified with a "switch," with an extended magazine inserted.

U.S. Sentencing Memorandum - 4
*United States v. Michael Janisch,* CR24-216 JHC

In the above exchange, Janisch and Hill talked about their goals regarding the generation of a specific amount of drug proceeds by a specific timeframe. Specifically, Janisch noted that Hill was "... finna be up a million... [,]" to which Hill replied, "[n]o cap [emoji] I'm on route to hit it before my bday in march." *Id*. When Janisch stated "[t]his the winning team fr [for real]," it appears that Janisch was further emphasizing how lucrative the drug trade had been for both. *Id*. Janisch further explained that a redistributor out in Minnesota was looking to obtain fentanyl "[fetty]." Of note, when Hill's residence was searched the following day, investigators seized approximately 26.7 kilograms of fentanyl pills, approximately $387,559 in U.S. currency, and multiple firearms.

## 2. Janisch's Snapchat Communications with Osman

Later in the investigation, after obtaining a federal warrant for the contents of Osman's Snapchat account—prezzi2x—investigators identified communications between Janisch ("nbaseattle1") and Osman ("prezzi2x") relating to both firearms and controlled substances.

Specifically, on September 26, 2023, Janisch (nbaseattle1) sent Osman (prezzi2x) the following photos that appear to depict privately manufactured firearms (often called "ghost guns" because they typically do not bear a manufacturer serial number):

U.S. Sentencing Memorandum - 5
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



The following day, on September 27, 2023, Janisch (nbaseattle1) sent Osman (prezzi2x) the below photographs which appear to depict distribution amounts of MDMA. *Id.*





U.S. Sentencing Memorandum - 6
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**3. Additional Evidence of Drug Trafficking and Firearms Possession Obtained During Search of Janisch's Snapchat Account**

In March 2024, based upon the communications detailed above, investigators obtained a search warrant for Janisch's "nbaseattle1" account. The responsive Snapchat records reflect that Janisch was communicating with multiple Snapchat users—in addition to Hill and Osman—regarding drug trafficking activities.

For example, on February 9, 2023, Janisch sent a Snapchat user ("Snapchat Account 1") the below image depicting a kilo-pressed brick of cocaine that has been broken up for distribution into smaller amounts.



//

//

//

U.S. Sentencing Memorandum - 7
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In yet another example, on November 15, 2022, Janisch sent a different Snapchat user ("Snapchat Account 2") a video depicting a large brick of cocaine. A screenshot from this video is below:



Janisch's Snapchat account (nbaseattle1) also contained photos and videos depicting Glock "switches" and firearms shooting automatically. For example, on March 18, 2023, Janisch sent a Snapchat user ("Snapchat Account 3") a message with a video attached. *Id*. The video depicts what appears to be a Glock "switch." The following is a screenshot from that video:

U.S. Sentencing Memorandum - 8
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On March 18, 2023, Janisch sent another video to a different Snapchat user ("Snapchat Account 4") which depicts the videographer shooting a pistol that fires fully automatically. It appears to be equipped with a "Glock switch," similar to the one depicted in the video above—as well as those seized from Janisch's residence on October 30, 2024. The following is a screenshot from the video:



**4. Discussion of Planned "Hit" Obtained from Janisch's Account "nbaseattle1"**

Janisch's Snapchat messages also contained a message thread discussing possible violence against one of Janisch's former redistributors. Specifically, on October 22, 2023, Janisch and another Snapchat user ("Snapchat Account 5") exchanged a series of communications in which they discuss the possibility of "hitting" the former redistributor:

| nbaseattle1 | 21:40:46 | I wanna see what cars are in the driveway |
| nbaseattle1 | 21:41:00 | You know I'm good for it I got cash for days |
| nbaseattle1 | 21:41:33 | Also lmk how much y'all want for that shit |
| Snapchat Account 5 | 21:41:40 | Nah I haven't yet everyone let me let this cool down and I'll talk to them about it |
| nbaseattle1 | 21:41:51 | Yesssir it's all good brotha |
| nbaseattle1 | 21:42:08 | I can't lie imma pay for this shit twice |
| nbaseattle1 | 21:42:15 | I want that one crib that I sent you |
| nbaseattle1 | 21:42:28 | And then imma wait to here his response and imma send another address |

U.S. Sentencing Memorandum - 9
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| nbaseattle1 | 21:42:49 | N***a wanna run off and act like I don't got the money to pay for him to get hit lol |
| Snapchat Account 5 | 21:45:22 | Bettt |
| nbaseattle1 | 21:48:57 | Bro finna call me after the first one get hit |
| nbaseattle1 | 21:49:04 | And imma be like yeah I told you that was finna happen |
| nbaseattle1 | 21:49:27 | Like bruh I really worked this dude up from 1 ounce of oil to 5 ps |
| nbaseattle1 | 21:49:30 | And he ran off on me |
| nbaseattle1 | 21:49:38 | Idc about the money that shit persoanl |
| Snapchat Account 5 | 21:49:57 | Fr thinking he's untouchable out here and damn that's fucked why people gotta bite the hand that feeds em |
| Snapchat Account 5 | 21:50:15 | Wats the address again? |
| nbaseattle1 | 21:50:24 | Hold up let me find it |
| nbaseattle1 | 21:50:29 | Save it in ya notes not in the chat |
| nbaseattle1 | 21:50:38 | And then delete later ya lnow |
| Snapchat Account 5 | 21:50:47 | Yup I already know |
| nbaseattle1 | 21:50:56 | [Street address, City] co [zip] |
| nbaseattle1 | 21:51:07 | Close to the freeway too |
| nbaseattle1 | 21:51:19 | Easy to hit real quick n speed out |
| nbaseattle1 | 21:51:49 | Picture Message |
| nbaseattle1 | 21:51:57 | 2 freeways easy access to both sides |
| nbaseattle1 | 21:52:28 | Hit it wit 2 cars no one will know what happen |
| nbaseattle1 | 21:53:16 | Shit really just make me mad like damn bro I really went out of my way to help build you and this how I get repaid |
| Snapchat Account 5 | 21:58:55 | What's the max u tryna spend. On this just so I can kinda let em know |
| nbaseattle1 | 22:11:36 | Y'all gotta let me know whag y'all want tbh |
| nbaseattle1 | 22:11:53 | You the service provider I'll tell you if it's worth it to me |
| Snapchat Account 5 | 22:18:22 | I'll just throw a number out |
| Snapchat Account 5 | 22:18:25 | 2500 |
| nbaseattle1 | 22:19:21 | Get it done before you slide out here and I'll have the cash waiting for you |
| Snapchat Account 5 | 22:20:13 | Bet |
| Snapchat Account 5 | 22:20:50 | We hit it this week |
| nbaseattle1 | 22:20:50 | Just lmk I'll be waitin |
| Snapchat Account 5 | 22:21:00 | Erase chats |
| nbaseattle1 | 22:21:53 | Blank Message |

U.S. Sentencing Memorandum - 10
*United States v. Michael Janisch,* CR24-216 JHC

| nbaseattle1 | 22:23:12 | You know I ain't cappin |
|---|---|---|
| Snapchat Account 5 | 22:24:14 | Shit I already be knowing |
| nbaseattle1 | 22:24:17 | Or do you want me to give you 2500 worth of work when you get here |
| nbaseattle1 | 22:24:32 | And that way you can sell it all and turn it into even more |
| nbaseattle1 | 22:24:57 | I'll give you an ounce of white a zip of molly, 2 ounces of shrooms and 2 sheets of acid |
| nbaseattle1 | 22:25:03 | Or 2500 |
| nbaseattle1 | 22:25:06 | Your choice |

Though the above message is relatively self-evident, it appears to reflect Janisch arranging to have the user of Snapchat Account 5 conduct a "hit" on one of Janisch's former redistributors. Specifically, Janisch asked the user of Snapchat Account 5 if he had visited the target's house and wanted to know what cars were in the driveway. Janisch then provided the user of Snapchat Account 5 with an address and instructed him to save, and then delete, the address from the Snapchat text string. Janisch further remarked that it would be an easy job ["Easy to hit real quick n speed out"], further instructing the user of Snapchat Account 5 to "hit" the target with two cars so that no one will know what happened. Janisch and the user of Snapchat Account 5 then discussed the amount that the "service provider" [the user of Snapchat Account 5] would charge Janisch for the hit. After being quoted a price of $2,500, Janisch told the user of Snapchat Account 5 that he could pay the quoted fee of "2500" [presumably dollars] or could make payment with "work" [controlled substances]. Of note, the "work" offered by Janisch—i.e., cocaine ["white"], MDMA ["molly"], psilocybin mushroom ["shrooms"], and two sheets of LSD ["acid']— were among the controlled substances seized during the search of Janisch's residence on October 30, 2024.

The conversation between Janisch and the user of Snapchat Account 5 continued, and they discussed a specific firearm that the user of Snapchat Account 5 was going to procure for Janisch:

U.S. Sentencing Memorandum - 11
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Snapchat Account 5 | 22:29:01 | But I think I'ma be able to get that gun for u too |
|---|---|---|
| nbaseattle1 | 22:29:27 | Do you remember which one! |
| nbaseattle1 | 22:29:29 | ? |
| nbaseattle1 | 22:29:35 | And we can work it out for both |
| nbaseattle1 | 22:29:47 | I can give you cash and work, or just work |
| nbaseattle1 | 22:30:40 | I need that shit still lolol |
| nbaseattle1 | 22:30:51 | I got 2 zips of white on it |
| Snapchat Account 5 | 22:31:32 | Yeah my boi said he got ppl that can legally purchase it |
| nbaseattle1 | 22:32:08 | Just grab that shit and bring it out here we in business |
| nbaseattle1 | 22:32:24 | I ain't even gonna use it for nothin dirty I got 30 other guns I can use |
| nbaseattle1 | 22:32:32 | I just wanna add this one to the collection lolol |
| Snapchat Account 5 | 22:33:46 | Bet |
| nbaseattle1 | 22:35:02 | Yeah don't even gotta worry about that shit I got burners for a reaosn lol |
| nbaseattle1 | 22:35:09 | I don't use my nice shit for missions lolol |
| nbaseattle1 | 22:35:19 | Imma use the 30 year glock for that shit |
| nbaseattle1 | 22:36:27 | I'm a collector and a shooter 💀 |

In the above exchange, it appears that Janisch was attempting to source from another state—likely Colorado given the context of the message—a firearm that he could not obtain in Washington. Janisch again offered to pay for the firearm with "work." Janisch further assured the user of Snapchat Account 5 that he is not going to use the firearm for anything illicit, further remarking that he has other weapons ("burners") that he uses for "missions."

## C. Lifestyle afforded by Janisch's Drug Trafficking

A review of Janisch's CashApp activity shows that beginning in 2020, and continuing until October 23, 2024, Janisch received CashApp transfers of more than $360,000 in drug trafficking proceeds. Dkt. 58 ¶ 8e; PSR ¶ 33. Specifically, Janisch received $64,576 across 115 transactions in 2020; $133,628 across 154 transactions in 2021; $46,183 across 128 transactions in 2022; $93,649 across 154 transactions in 2023; and $22,334 across 64 transactions in 2024. Dkt. 58 ¶ 8e.

Though largely unemployed from 2020 until his arrest on October 30, 2024, Janisch nonetheless traveled to Canada, Mexico, Puerto Rico, Guatemala, Costa Rica, Belize,

U.S. Sentencing Memorandum - 12
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Aruba, Bonaire, and Curacao during this time. The lifestyle afforded by Janisch's drug trafficking activity is reflected in a video that he took during a sunset horseback ride with his bikini-clad girlfriend while vacationing in Costa Rica in April 2023:




Janisch on horseback at sunset   Janisch's girlfriend on same sunset ride

### D. Seizures from Janisch's Residence

During the search of Janisch's residence on October 30, 2024, investigators seized approximately 31.44 kilograms (gross) of psilocybin mushrooms and/or marijuana, 4.096 kilograms of cocaine, 668.7 grams of MDMA, 851.5 grams of ketamine, and 64.44 grams of LSD. *Id.* ¶ 31.

The search also led to the seizure of 31 firearms—at least two of which appeared to be 3D printed, an assortment of Glock switches, several suppressors, scores of high-capacity magazines, and thousands of rounds of ammunition. *Id.* Finally, investigators also

U.S. Sentencing Memorandum - 13
*United States v. Michael Janisch,* CR24-216 JHC

located as stash of cash drug trafficking proceeds totaling $177,923, as well coins and precious metals worth thousands more. *Id.* ⁋ 32.

Though evidence was found throughout the residence, much of it was found in a safe in Janisch's bedroom (shown below). It was chock-full of firearms, high-capacity magazines, kilograms of controlled substances, and drug trafficking proceeds.

 

//

//

//

U.S. Sentencing Memorandum - 14
*United States v. Michael Janisch,* CR24-216 JHC



U.S. Sentencing Memorandum - 15
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In addition to the cache of semiautomaitc rifles that were located on the left side of the safe, the door of the safe also had pockets that contained seven additional handguns—most of which were loaded. Among these firearms were a Glock with a "switch" (circled below, left) and what appeared to be a 3D printed pistol (circled below, right).

 

There were also several bags of "switches" (below left) which appeared similar to those observed in videos on Janisch's Snapchat account—discussed above—as well as the "switch" installed on a tan and black Glock that was in the safe (below right).

 

U.S. Sentencing Memorandum - 16
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Right next to these firearms, investigators also found 4.096 kilograms of cocaine, 668.7 grams of MDMA, 851.5 grams of ketamine, and what appeared to hundreds—if not thousands—of hits of LSD (total weight of blotter paper was 64.44 grams).

 

Another room in the house appeared to be an "office" used in part for packaging controlled substances for shipment. It contained a desk with printer (presumably for postage), a vacuum-sealer and vacuum-seal bags, USPS mailers and other envelopes, and a digital scale. In a closet in this room, investigators also found—in vacuum-sealed bags— approximately 31.44 kilograms of psilocybin mushrooms and/or marijuana (bottom right).

 

U.S. Sentencing Memorandum - 17
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III.   GUIDELINES

Pursuant to the plea agreement, and as detailed in the Presentence Report, the parties have agreed that certain sentencing guidelines apply to this case. Dkt. 58 ¶¶ 9-10; PSR ¶¶ 3, 40, 48-49. The government and U.S. Probation also believe that a two-level enhancement is applicable pursuant to USSG § 2D1.1(b)(12) because Janisch maintained a drug-involved premises. PSR ¶ 42. Janisch disputes the applicability of this Guideline provision.

| Item | Guideline | Offense Level/Adjustment |
|------|-----------|--------------------------|
| Base Offense Level 1,000 – 3,000 kg converted drug weight | 2D1.1(c)(5) | 30 |
| *Drug-Involved Premises* | *2D1.1(b)(12)* | *+2* |
| Acceptance of Responsibility | 3E1.1(a) and (b) | -3 |
| Final Offense Level | | 27/29 |

The government agrees with U.S. Probation's calculation that Janisch has one criminal history point, and therefore he falls into Criminal History Category I. *Id.* ¶¶ 51-54.

If the Court does not apply the two-level enhancement pursuant to Section 2D1.1(b)(12), the final offense level for Count 1 would be 27, with a corresponding Guidelines range of 70-87 months. If the Court does apply the two-level enhancement, the final offense level would be 29, with a corresponding Guidelines range of 87-108 months. PSR ¶ 95.

Pursuant to the plea agreement, the parties also agreed that USSG § 2K2.4 applies to Count 2. Dkt. 58 ¶ 9(b). The government agrees with U.S. Probation's determination that the Guideline term for Count 2 is 60 months. PSR ¶¶ 3, 95. The minimum term of imprisonment required under Count 2 is to be served consecutively to Count 1. PSR ¶ 94.

U.S. Sentencing Memorandum - 18
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based upon the above, the government calculates that the combined Guidelines term (for Counts 1 and 2) would be:

- 130 – 147 months (no 2D1.1(b)(12) enhancement applied), or
- 147 – 168 months (2D1.1(b)(12) enhancement applied).

## IV.   RECOMMENDATION AND JUSTIFICATION

The government is recommending a total custodial sentence of 96 months of imprisonment—36 months on Count 1, with the mandatory consecutive term of 60 months on Count 2.

This recommendation is appropriate considering the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) requires the Court to fashion a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed training, care, or treatment. This Court is also to consider the nature and circumstances of the offense, the history and characteristics of the offender, the kinds of sentences available, the policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the defendant's crimes. However, as the Ninth Circuit and the Supreme Court have made clear, the sentencing guidelines are "the 'starting point and the initial benchmark' . . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 996 (9th Cir. 2008) (internal citations omitted).

**A. The Seriousness of the Offense and Janisch's Role**

Janisch engaged in the trafficking of MDMA, ketamine, LSD, psilocybin mushrooms, and marijuana on such a scale that it netted him hundreds of thousands of dollars in drug proceeds. Janisch's business model was unlike that of the defendants in the related cases. Instead of in-person deals, Janisch largely interacted with his drug customers via social media or other digital means. And because Janisch was not limited to face-to-

U.S. Sentencing Memorandum - 19
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

face transactions, he could deliver his product to customers nationwide using the U.S. mail system or other parcel delivery services.

Though fentanyl gets the lion's share of attention with respect to overdose deaths—and rightly so—the drugs that Janisch distributed were dangerous in their own right. Indeed, cocaine was the third most common drug involved in overdose deaths in King County in 2025.[3] Specifically, out the 914 overdose deaths in King County in 2025, cocaine was involved in 24% (218) of these deaths—often in combination with fentanyl. *Id.* Similarly, though ketamine is often characterized as a "party drug," Congress has seen fit to apply a different label in designating it as a "date rape drug." 21 U.S.C. § 841(g)(2)(A)(ii).

Plus, Janisch did not just traffic drugs. He did so while possessing an arsenal of semiautomatic rifles and pistols, thousands of rounds of ammunition, numerous high-capacity magazines, several Glock "switches," and multiple suppressors. It is plain that drug trafficking and guns is an inherently "dangerous combination" that creates "a grave possibility of violence and death." *Smith v. United States*, 508 U.S. 223, 240 (1993); *see United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001) ("Congress enacted the current version of 18 U.S.C. § 924(c)(1) in reaction to a shocking correlation between drugs and violence."). The "danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute." *United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004).

Finally, the government would note that although Janisch was not encountered with firearms outside his residence, investigators did seize a 9mm semiautomatic Glock pistol—with an extended magazine loaded with hollow point bullets—from a handbag next to the residence's front door. And though the government initially attributed this handbag to

[3] https://kingcounty.gov/en/dept/dph/health-safety/safety-injury-prevention/overdose-prevention-response/data-dashboards. Last accessed, April 27, 2026.

U.S. Sentencing Memorandum - 20
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Janisch's girlfriend, Janisch disabused the government of that belief in litigation relating to modification of his bond conditions. *See* Dkt. 25 at 5. As such, given the presence of a loaded firearm in what appears to be Janisch's handbag next to the front door, it seems apparent that Janisch carried firearms outside his residence.

 

In sum, the government submits that Janisch's conduct clearly merits the requested custodial sentence.

## B. Janisch's History and Characteristics

In terms of mitigation, the government acknowledges that Janisch was twenty or twenty-one-years-old when the instant offense conduct started. The government further notes that Janisch's prior adult criminal history is limited to a single conviction for Driving Under the Influence.

As noted in the PSR, Janisch also suffered a concussion as a child which may have had effects that continued into adolescence. PSR ¶63. The government also acknowledges that Janisch was diagnosed with ADHD, and the prescribed medication may have had effects on Janisch's mood, which may, in turn, have had secondary impacts. *Id*. Similarly, the circumstances surrounding Janisch's enrollment at new schools in Utah and Arizona were no doubt a shock to Janisch and challenging for a seventeen-year-old. *Id*.

U.S. Sentencing Memorandum - 21
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

That said, unlike many individuals that face this Court for sentencing, Janisch was raised in an upper middle-class neighborhood in an intact household. Indeed, as a child, Janisch did not experience physical insecurity, food insecurity, or housing insecurity. More specifically, Janisch was not a victim of domestic violence, did not witness violence in the home, nor did he witness violence in his community. And though Janisch's relationship with his parents was not without complications, they have been a resource to him throughout his adolescence and into early adulthood. In short, more than most of the defendants that this Court sentences, Janisch was provided with the fundamental building blocks to lead a pro-social life. Yet he found himself engaged in extremely serious offense conduct that occurred over a period of years.

Furthermore, though the government is heartened by Janisch's performance on pretrial bond, his ability to abide by his bond conditions also begs the following questions: What, if anything, changed since his arrest and release? And, if Janisch can live pro-socially now, why not before?

## C. Promotion of Respect for the Law, Deterrence, Just Punishment, and Protecting the Public from Future Crimes of the Defendant

As noted throughout, the defendant engaged in a yearslong scheme to distribute myriad controlled substances. Janisch's scheme was more sophisticated than many as he largely took drugs orders via social media, packaged the drugs for shipment at his house, and coopted the U.S. mail service, and other parcel services, to deliver his product. Moreover, Janisch's conduct persisted despite Bryce Hill's arrest and Amir Osman's death, and it seems apparent that Janisch would have continued to traffic drugs on a massive scale, but for law enforcement's intervention. Janisch's sustained drug trafficking activity—while on probation in Minnesota for a pending DUI—demonstrates an utter lack of respect for the law and merits a significant sanction. Moreover, the sentence must send a sufficient deterrent message that regardless of the manner accomplished, or the substances involved, that trafficking in drugs on such a scale will be appropriately punished.

U.S. Sentencing Memorandum - 22
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

More specific to Janisch, a 96-month sentence will send the message to Janisch that, he alone—as a now twenty-seven-year-old man—is responsible for his actions. A three-year term of supervised release is also sufficient for Janisch to demonstrate that he can maintain a pro-social lifestyle once he is released from custody.

**D. The Need to Avoid Unwarranted Sentencing Disparity**

Janisch will be the tenth defendant sentenced in this and the related cases. To date, the custodial sentences adjudged by the Court have ranged from 120 months—Cooper Sherman, to 48 months—defendant Patrick Smith.

The government believes that Janisch's offense conduct places him at higher end of culpability vis-à-vis the defendants in the related cases. Indeed, Janisch possessed more firearms—by far—than any of the defendants in the related cases. In fact, Janisch alone possessed roughly the same number of guns as all the remaining defendants in the related cases combined. Cash seizures from Janisch's residence—except for those at Bryce Hill's residence—were the most among any of the related defendants and Janisch also possessed the most Glock "switches." Again, and though Janisch did not possess fentanyl at his residence, the drug seizures at his residence were among the most significant in terms of quantity and variety of controlled substances.

The requested 96-month sentence is also the midpoint between the sentences the Court imposed upon Yohannes Wondimagegnehu (72 months) and Cooper Sherman (120 months)—the two related defendants (in CR24-186) that have been sentenced for both a Title 21 and Section 924(c) offense. This midpoint sentence appropriately places Janisch as more culpable than Wondimagegnehu (because Janisch possessed Glock "switches," and far more guns, drugs, and drug trafficking proceeds at his residence at the time of takedown), but less culpable than Sherman (who predominantly trafficked fentanyl on a very large scale).

//

//

U.S. Sentencing Memorandum - 23
*United States v. Michael Janisch,* CR24-216 JHC

## V.   CONCLUSION

For the reasons set forth above, the government recommends that the Court sentence Janisch to a total custodial sentence of 96 months followed by three years of supervised release.

Dated this 27th day of April, 2026.

Respectfully submitted,

*/s/ Joseph C. Silvio*
JOSEPH C. SILVIO
MICHELLE JENSEN
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-1522
Fax: 206-553-4659
E-mail: joseph.silvio2@usdoj.gov

U.S. Sentencing Memorandum - 24
*United States v. Michael Janisch,* CR24-216 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970